IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICHOLAS KNOPICK, :
          Plaintiff : No. 1:14-cv-2090
:
          v. : (Judge Kane)
:
UBS AG, et al., :
          Defendants :

## MEMORANDUM

Before the Court is Defendants UBS AG, UBS SF, and Rene Elste's motion to dismiss for lack of jurisdiction and failure to state a claim. (Doc. No. 24.) The Court held oral argument on the motion on July 30, 2015. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion.

## I.    BACKGROUND[1]

This case concerns investment losses Plaintiff incurred while Defendants were managing his money. Plaintiff alleges he incurred losses because Defendants invested his money unwisely and against his wishes, and he believes that his losses were the result of fraud. Plaintiff also believes that his situation is tied to a larger criminal conspiracy that was the object of a criminal investigation into Defendants' American business, and that ended in a 2009 deferred prosecution agreement between the United States Department of Justice and UBS AG.

Plaintiff Nicholas Knopick is an American investor and commercial cargo pilot who is a resident of Marysville, Pennsylvania (Doc. No. 19 ¶ 14), although Plaintiff has indicated in filings before other courts that he resides in Arkansas (Doc. No. 1 ¶ 8). Defendants UBS AG

---

[1] The background is drawn from Plaintiff's amended complaint, together with Defendants' motion and supporting documents.

1

and UBS Swiss Financial Advisers, Inc. ("UBS SFA," or together, "UBS"), are Swiss corporations that maintain their principal places of business in Switzerland, although both are actively engaged in business in the United States. (Doc. No. 19 ¶¶ 15-16.) Defendant Rene Elste is a Swiss employee of UBS SFA.[2] (Doc. No. 19 ¶ 17.)

Plaintiff describes at length a Department of Justice investigation into UBS' American business in the years leading up to 2007. According to Plaintiff, UBS "operated a cross-border banking business with United States clients," to shield wealthy individuals from their American tax burden. (Id. ¶¶ 24-25.) Plaintiff alleges that UBS sent employees to the United States to clandestinely recruit new clients for the illegal business. (Id. ¶ 26.) According to Plaintiff, UBS' American cross-border business served 20,000 clients and concealed approximately $20 billion from United States authorities. (Id. ¶ 32.) After a whistleblower alerted the Department of Justice to UBS' activities, UBS acknowledged its cross-border business, entered into a deferred prosecution agreement, and paid $780 million in fines. (Id. ¶ 151.)

Plaintiff began investing with UBS and its affiliates in January 2007 when he opened a brokerage account with UBS Financial Services, Inc ("UBS FS").[3] (Doc. No. 19 ¶ 76.) Plaintiff alleges that his investment strategy, which had been successful for him in the past, involved

---

[2] Another defendant, Joseph Scoby, alleged to have been a UBS AG executive at the time of the events in question, is separately represented and is not a party to the present motion. (See Doc. Nos. 19 ¶ 18,

[3] It appears that UBS Financial Services, Inc., was a party in the litigation in state court, but it does not appear in the federal action, because it became clear at oral argument that the Dauphin County Court of Common Pleas granted an earlier motion to compel arbitration on behalf of UBS FS. (See Doc. No. 1-15.) UBS FS is, however, the only remaining defendant in Plaintiff's related litigation in the Eastern District of Pennsylvania. See Knopick v. UBS Financial Services, Inc., No. 2:14-05639 (E.D.P.A.).

investing in blue chip equities. (Id. ¶ 76.) Plaintiff argues that his initial UBS adviser in Baltimore, Susan Seifert, herself a former defendant in state court, was aware of Plaintiff's investment strategy. (Id. ¶¶ 20, 76.) Shortly after Plaintiff enrolled with UBS FS, Seifert introduced Plaintiff to Andreas Knopfel, a man Plaintiff now alleges to be "a participant in the UBS AG cross-border tax fraud scheme . . . investigated by" American law enforcement. (Id. ¶¶ 1, 77.) At the time, however, Plaintiff was unaware of Knopfel's criminal activities and agreed to allow Knopfel to manage his investments. (Id. ¶ 78.) This led to a broadening of Plaintiff's relationship with UBS and its affiliates, and Plaintiff "opened two fiduciary investment accounts with UBS SFA." (Id.) Plaintiff "fund[ed] the two accounts, as he was instructed, with a wire transfer deposit in the amount of $12,445,483.47 from his Wachovia Bank account in Pennsylvania to UBS AG in Switzerland." (Id.)

When opening these accounts, Plaintiff signed a number of documents with UBS. These include eight separate documents, ranging in title from a "Basic document for account/custody account relations," to "Creation of Pledge," that include forum selection clauses. (See Doc. Nos. 24-6, 24-7, 24-8, 24-9, 24-10, 24-11, 24-13, 24-14.) The forum selection clauses are functionally identical among the documents. (E.g., Doc. No. 24-10 at 3.) The clauses provide that Zurich, Switzerland shall be the exclusive forum for dispute resolution, and that Swiss law shall govern disputes and contract interpretation. (E.g., id.) In the clauses, UBS reserves the right to sue Plaintiff either in his domiciliary jurisdiction or before any other competent authority.[4] (E.g., id.) In other documents, Plaintiff indicates that he has an "above average"

---

[4] The full language of the clauses is: "The present Agreement and/or Declaration shall be exclusively governed by and construed in accordance with Swiss law. The place of performance of all obligations of both parties, the place of debt collection, the latter only for clients domiciled

3

appetite for risk in his portfolio. (E.g., Doc. No. 24-12.)

Plaintiff alleges that thereafter, UBS AG extended him credit and encouraged him to borrow from UBS AG, while recklessly investing his money or misappropriating it outright. (Doc. No. 19 ¶¶ 85-95.) Plaintiff alleges that his investment ultimately dwindled to approximately $900,000. (Id. ¶ 90.) Plaintiff alleges that Defendants contacted him in Pennsylvania by telephone, by mail, and by fax, and that he executed his account documents while in Pennsylvania. (See e.g., id. ¶ 78, 82-84, 86.) Plaintiff also alleges that UBS employed registered broker-dealers in Pennsylvania throughout the relevant time period and that "UBS AG owned and operated banks, investment banks, and stock brokerage businesses throughout the world, also operating in the Eastern District of Pennsylvania and elsewhere in the United States." (Id. ¶¶ 23, 73.)

While Plaintiff has alleged that Defendants engaged in illegal activities and that UBS admitted as much to investigating authorities, it remains unclear the extent to which Plaintiff alleges that UBS' activities were illegal in his particular case. According to his brief, "[t]he particular illegalities" in his case include UBS' failure to disclose that it was "not authorized to conduct banking business in Switzerland with U.S. citizens in 2007," that UBS hid tax information regarding American clients from the Internal Revenue Service, and that "UBS SFA required [Plaintiff] to open an illegal bank and credit facility at UBS AG in order to fund his investment account." (Doc. No. 33 at 33-34.)

---

outside Switzerland, as well as the exclusive place of jurisdiction for any disputes arising out of any in connection with the present Agreement and/or Declaration shall be Zurich, Switzerlands. UBS SFA reserves the right, however, to take legal action against [Plaintiff] before the authority of [Plaintiff's] domicile or before any other competent authority, in which even exclusively Swiss law shall remain applicable." (Doc. No. 24-10 at 3) (emphases in original).

## II. DISCUSSION

Defendants argue that the eight forum selection clauses mandate dismissal pursuant to the doctrine of forum non conveniens, and Defendants also argue that the Court lacks personal jurisdiction over them. (Doc. No. 25 at 20, 36.) Plaintiff argues that the forum selection clauses cannot be enforced because the underlying contracts and the dispute resolution clauses are invalid and were obtained through fraud. (Doc. No. 33 at 34-38.) In addition, Plaintiff maintains that Defendants are subject to specific personal jurisdiction in this judicial district, and that Defendants are subject to personal jurisdiction because their intentionally tortious activities caused substantial harmful effects here. (Id. at 47-52.)

Defendants ask the Court to dismiss the present action as a means of enforcing the forum selection clauses, which provide for litigation in the courts of Zurich, Switzerland.[5] The Court employs the federal common law forum non conveniens standard to evaluate Defendants' motion. See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 580 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.").

The forum non conveniens analysis is bifurcated depending on whether a relevant forum selection clause governs the parties' dispute. Atlantic Marine, 134 S. Ct. at 581 ("The [forum non conveniens] calculus changes, however, when the parties' contract contains a valid forum selection clause[.]"). In the absence of a valid forum selection clause, courts weigh factors implicating the convenience of the parties and certain "public interest considerations." Atlantic

---

[5] Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(2) or 12(b)(6), under the common law doctrine of forum non conveniens.

5

Marine, 134 S. Ct. at 581. However, prima facie valid forum selection clauses are to be honored "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) ("The Bremen"); see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983). A forum selection clause controls "absent a strong showing that it should be set aside."[6] The Bremen, 407 U.S. at 15. The Court first determines whether the forum selection clauses are enforceable and, finding that they are, the Court turns to the balance of the forum non conveniens analysis.

### A. Enforceability of the forum selection clauses

Forum selection clauses are "unreasonable" where (1) the clause itself is "invalid for such reasons as fraud or overreaching," id. at 15; (2) "enforcement would contravene a strong public policy of the forum in which suit is brought," id. at 16; or (3) "trial in the contractual forum [would] be so gravely difficult and inconvenient that" the resisting party would "for all practical purposes be deprived of [its] day in court," id. at 18. Defendants have argued that none of these scenarios is present here. (Doc. No. 25 at 23-29.) Plaintiff has argued that the (1) the clauses are invalid for (1) illegality and (2) fraud, and (3) that strong Pennsylvania public policy precludes enforcement of the clauses. (Doc. No. 33 at 34-40.) Plaintiff bears the burden of establishing the invalidity of the forum selection clauses, so the Court addresses Plaintiff's arguments in turn.

---

[6] At the outset, the Court observes, and Plaintiff does not dispute, that his signature appears on a number of forum selection clauses that are prima facie valid. It is therefore incumbent upon Plaintiff to make a "strong showing" that the clauses should not be enforced. See The Bremen, 407 U.S. at 10.

1.   **Illegality**

The main thrust of Plaintiff's argument is that Defendants' banking activities in the United States were illegal, and its contracts with Plaintiff were illegal, so the forum selection clauses within those contracts may not be enforced. (See Doc. No. 33 at 34-37) ("[T]he entire cont[r]act, including the forum selection clause, is an 'infected bargain.'")

Illegality is not specifically mentioned in The Bremen, or the United States Supreme Court's subsequent cases regarding forum non conveniens and forum selection clauses. The parties have chiefly devoted their briefing on this issue to two appellate cases from other circuits. In Rucker v. Oasis Legal Finance, LLC, 632 F.3d 1231 (11th Cir. 2011), the court held that it was proper to enforce a forum selection clause, even though the parties' principal contract would have likely been void under an Alabama law treating contingent litigation financing as illegal gambling. 632 F.3d at 1237-38. Similarly, in Muzumdar v. Wellness Int'l Network, Ltd., 438 F.3d 759 (7th Cir. 2006), the court rejected an argument that if the underlying contract were void, so too would its forum selection clause. 438 F.3d at 762. In Rucker, the Eleventh Circuit found it dispositive that a forum selection clause is regarded as a separate contract, the validity of which is not dependent on the validity of the principal underlying contract. See 632 F.3d at 1238 ("A forum selection clause is viewed as a separate contract that is severable from the agreement in which it is contained.") (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 518 (1974)). Neither the Third Circuit nor the Supreme Court has spoken directly to this issue.

The Court agrees with Defendants that it is the legality of the forum selection clause, and not of the underlying contract, that governs this question. The rubric from The Bremen allows a party to avoid a forum selection clause that is itself illegal because it violates public policy, but

7

Plaintiff has cited no authority for the proposition that the outcome of a forum non conveniens analysis turns on whether the underlying contract is a nullity. See 407 U.S. at 16. The validity of the underlying contracts, together with any breach of those contracts, are questions more properly addressed to the court or courts that the parties themselves selected to settle their disputes. See Muzumdar, 438 F.3d at 762. Further, Plaintiff has not argued that the forum selection clauses, when viewed as separate contracts, are illegal on their own.[7] Accordingly, the Court will not set aside the forum selection clauses based on the alleged illegality of the principal contracts.

2. **Fraud**

Plaintiff also argues that, because Defendants withheld information about their legal trouble and about the legality of their business relationship with Plaintiff, the forum selection clauses were procured through fraud. (Doc. No. 33 at 37-39.) Plaintiff also argues that forum selection clauses were the product of fraud because Defendants did not disclose that the clauses would be void under Swiss law. (Id. at 38.) Defendants argue that allegations of general fraud on the principal contract are not sufficient to avoid the enforcement of a forum selection clause. (Doc. No. 25 at 24-26.)

A party may avoid the enforcement of a forum selection clause upon a strong showing that it was the product of "fraud, undue influence, or overweening bargaining power." The Bremen, 407 U.S. at 12-13. However, this "does not mean that any time a dispute arising out of

---

[7] Plaintiff also argues that his is a case of first impression, because Defendants admitted through the deferred prosecution agreement that their conduct was illegal. (Doc. No. 33 at 34-35.) However, Defendants argue that the main contracts were not illegal, and because the question centers only on the forum selection clauses' validity, the Court will not conduct a searching inquiry into the legality of Defendants' main contracts in Plaintiff's particular case.

a transaction is based upon an allegation of fraud . . . the clause is unenforceable." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974). Instead, a resisting party must show that "the inclusion of [the forum selection] clause in the contract was the product of fraud or coercion." Id.; see also MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 847 (3d Cir. 2003) ("the proper inquiry is whether the forum selection clause is the result of "fraud in the inducement of the [forum-selection] clause itself.") (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967)). In Scherk, the Supreme Court went on to suggest that allegations of fraud regarding the principal contract could be evaluated by the contractually selected tribunal – there, an arbitration panel. 417 U.S. at 519 n.14.

Two of Plaintiff's bases for alleging fraud are specific to the inclusion of the forum selection clauses such that they may be considered under Scherk: (a) that the clauses were not negotiated, and (b) that Defendants did not disclose that the clauses were illegal under Swiss law. (See Doc. No. 33 at 37-38.) The first can be summarily rejected, because the Supreme Court has held that a forum selection clause should not be rejected merely because it was not separately negotiated. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991).

As to the second, Plaintiff does not precisely elucidate how Defendants' alleged failure to disclose the forum selection clauses' purported invalidity under Swiss law constitutes fraud. Defendants argue that the invalidity of the forum selection clause would actually have improved Plaintiff's position, and that in any event, Swiss courts would not hesitate to enforce the forum selection clauses as written. (Doc. No. 41 at 18-19.) The parties enlisted Swiss law experts to speak to this issue and others. (See Doc. Nos. 24-4, 33-8, 41-1.)

The Court finds that Plaintiff has not made a strong showing of fraud. First, it is

9

incumbent upon Plaintiff to establish fraud in this case, and Plaintiff has not alleged that the clause's validity under Swiss law was material to him at the time of contract formation.[8] Further, upon a review of the parties' expert materials, it appears to the Court that the clauses would be valid in a Swiss forum.

On this point, Defendants' expert attested that Swiss courts would apply the Convention on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters of October 30, 2007 ("Lugano Convention"), to the parties' dispute. (Doc. No. 24-4 ¶¶ 8-10.) Plaintiff's expert readily agrees that the Lugano Convention would apply to the parties' dispute before a Swiss court. (Doc. No. 33-8 ¶ 6.) In addition, both experts agree that Article 23 of the Lugano Convention, which a Swiss court would apply in deciding its own jurisdiction over the parties' dispute, provides that Swiss courts must exercise jurisdiction when a forum selection clause designates Swiss courts and where at least one contracting party is domiciled in a Lugano Convention member state. (Doc. Nos. 33-8 ¶ 6; 41-1 ¶ 5(c).) Plaintiff's expert argues that Swiss law discriminates against Plaintiff, because Plaintiff, as a resident of the United States and not a Lugano Convention member-state, is not entitled to certain consumer protections the convention provides to member-state residents (Doc. No. 33-8 ¶ 24.) According to Plaintiff's expert, it would be "odd" for an American court to enforce a forum selection clause against an American when the clause "would be held invalid by the Courts of the member states of the Lugano Convention <u>when their own residents are involved</u>." (<u>Id.</u>) (emphasis added). Differently stated, the experts <u>agree</u> that courts applying Swiss law (here, the Lugano Convention) <u>would</u>

---

[8] The Court disagrees with Defendants that the invalidity of the forum selection clauses would have benefitted Plaintiff, because the Court questions whether Plaintiff would have willingly entered into a contract containing a dispute resolution clause he knew to be invalid.

10

enforce the forum selection agreement and exercise jurisdiction, even though Plaintiff's expert believes that this result is inequitable.⁹ As a result, there was no fraud in the inducement of the forum selection clauses related to the clauses' ultimate enforceability in Switzerland.

In sum, the Court finds that Plaintiff has failed to make a "strong showing" of fraud, and will not set aside the forum selection clauses on that basis.

### 3. Public policy

Plaintiff also argues that the forum selection agreements are invalid because they violate Pennsylvania's public policy of regulating and licensing its own banks. (Doc. No. 33 at 39-40.) Defendants counter that in this case, the only banking activities took place in Switzerland, and that in any event, the existence of local regulation is insufficient to show a strong public policy against the forum selection clauses at issue. (Doc. No. 41 at 20-21.) In addition, Defendants argue that Pennsylvania and the Third Circuit have public policies in favor of enforcing forum selection clauses. (Doc. No. 25 at 27.)

A party seeking to avoid a forum selection clause may do so upon a strong showing that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." The Bremen, 407 U.S. at 15. Again, a resisting party must show that enforcing the forum selection clause violates public policy, and a showing that the underlying contract would contravene a forum's public policy will not suffice to avoid the clause's operation. See id. Pennsylvania regulates banks and financial institutions that do business within the Commonwealth. See e.g., 7 Pa. Stat. § 101 et seq. These regulations include restricting those entities that may engage in the business of banking within Pennsylvania.

---

⁹ Plaintiff's counsel did not argue to the contrary at oral argument.

Id. § 105. Violators are subject to criminal penalties, though the statute does provide a civil cause of action for those damaged by violations of Pennsylvania's banking law Section 112, which requires those acquiring shares of a bank or bank holding company to seek approval of state authorities first. Id. §§ 112, 2105.

The Court is satisfied that Pennsylvania's banking laws evince a Pennsylvania public interest in regulating the business of banking within its borders. However, the Court is not satisfied that Defendants' activities within the Commonwealth are those proscribed by Section 105, because UBS appears to have received Plaintiff's deposit money in Switzerland and otherwise conducted its banking business abroad. The Court questions whether rendering services abroad to domestic clients can be equated with rendering services domestically. Moreover, it cannot be said that enforcing the forum selection agreement in this case would "contravene" Pennsylvania's strong public policy. For comparison, the Seventh Circuit found that Illinois' strong public policy precluded the operation of a forum selection agreement when the applicable Illinois statute provided that "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void[.]"[10] Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801, 806 (7th Cir. 2011) (citing 815 Ill. Comp. Stat. 705/4).

In sum, the Court finds that Plaintiff has not established that enforcing the forum selection clause would contravene a strong Pennsylvania public policy, and will not invalidate

---

[10] Plaintiff cites a recent district court disposition from the Eastern District of Pennsylvania that held that Pennsylvania utility regulation regime expressed Pennsylvania's strong interest in having the dispute litigated locally when weighed against the designated forum's interest. Silvis v. Ambit Energy, L.P., No. 14-5005, 2015 WL 1134780, at *5 (E.D. Pa. Mar. 13, 2015). However, that court did not pass on the validity of the forum selection clause, instead proceeding directly to weighing the public interest factors at stake – a separate inquiry altogether than that which the Court undertakes at this juncture. See id.

the forum selection clauses on that basis.

B.      Adequate alternative forum and public interest factors

The Court found above the Plaintiff failed to make a strong showing that the forum selection clauses should be set aside, so the Court now turns to Atlantic Marine's modified forum non conveniens analysis.[11]  "[A] valid forum-selection clause should be given controlling weight in all by the most exceptional cases."  Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 580 (2013).  Any court dismissing a case on forum non conveniens grounds, including those enforcing forum selection clauses, must find that the destination forum is an adequate alternative.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981).  In the present case, Plaintiff does not argue that Switzerland is not an adequate alternative forum, except to argue that Swiss courts would not enforce the forum selection agreement – an argument the Court addressed and rejected above.  (See Doc. No. 33 at 42.)  Accordingly, the Court has no difficulty in determining that Switzerland is an adequate alternative forum for this dispute.

When there is a valid forum selection clause designating an adequate alternative forum, "the plaintiff's choice of forum merits no weight;" and the Court may consider only the so-called "public-interest factors" in deciding whether or not to enforce the forum selection agreement.

---

[11] Atlantic Marine applies only when the parties executed a "mandatory," and not "permissive" forum selection clause.  Dawes v. Publish Am. LLLP, 563 F. App'x 117, 118 (3d Cir. 2014) cert. denied sub nom. Dawes v. Publish Am. LLP, 135 S. Ct. 1159 (2015).  However, as Plaintiff's counsel acknowledged at oral argument, out-of-circuit appellate jurisprudence characterizes forum selection clauses as mandatory or permissive according to their effect on the party seeking to avoid enforcement.  See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 756-57 (7th Cir. 1992).   Because the clauses do not allow Plaintiff to bring suit in any forum except Switzerland, the Court finds that the clauses are mandatory as to him, so Atlantic Marine applies.

13

Atlantic Marine, 134 S. Ct. at 581-82. The public interest factors "will rarely defeat a transfer motion," and they "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." Id. at 581 n.6 and 582. Other public interest factors may include "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft, 454 U.S. at 241 n.6 (citations omitted). "As the party acting in violation of the forum-selection clause," Plaintiff "must bear the burden of showing that public-interest factors overwhelmingly disfavor" enforcing the forum selection clause. Atlantic Marine, 134 S. Ct. at 583.

Plaintiff argues that Pennsylvania's local interest in its own banking regulations, similar to the utility regulations at issue in Silvis in the Eastern District of Pennsylvania, is a controlling public interest factor precluding dismissal or transfer. (Doc. No. 33 at 45.) Defendants argue that (1) Swiss courts are not unduly congested; (2) the contract calls for the application of Swiss law, so a Swiss tribunal is better suited to interpret it; (3) this is not a localized controversy, because most, if not all, of the alleged bad acts occurred in Switzerland; (4) the local jury pool would be burdened with a case about banking in Switzerland; (5) Silvis can be distinguished, because Defendants do not engage in banking locally; and (6) Switzerland's interest in resolving the dispute is stronger than Pennsylvania's, and must also be weighed. (Doc. Nos. 25 at 32-35; 41 at 30-32.)

While the Court acknowledges that Pennsylvania has a local interest in banking regulation, the Court is persuaded that Switzerland has an equally strong interest in policing the

foreign activities of its native financial institutions. Further, the forum selection clauses call for Swiss law, and the great majority of the events that predicate Plaintiff's claims occurred in Switzerland, not in Pennsylvania. In sum, the Court finds that Plaintiff has failed to establish that the public interest factors overwhelmingly disfavor enforcing the forum selection clause.[12, 13]

## III. CONCLUSION

The Court finds that the forum selection clauses mandate dismissal of this action pursuant to the doctrine of <u>forum non conveniens</u>. In light of its finding, the Court will not consider the question of personal jurisdiction over the moving Defendants. An order consistent with this memorandum follows.

---

[12] Defendants have argued that individual UBS employee Rene Elste, is entitled to avail himself of the forum selection agreements. Plaintiff has made no argument to the contrary, and the Court finds that the acts Mr. Elste is alleged to have committed are part and parcel of the case against the UBS entities. See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983). Accordingly, the Court finds that Mr. Elste may avail himself of the forum selection agreements.

[13] Given the apparent scope of the forum selection agreements and in the absence of argument to the contrary, the Court is satisfied that the forum selection agreements encompass all claims Plaintiff brings against the moving Defendants.